## KHIN v. UNITED STATES.
### No. 4479.

Circuit Court of Appeals, Third Circuit.

March 4, 1931.

F. P. M. Pearse, of Newark, N. J. (Max Mehler, of Newark, N. J., on the brief), for appellant.

Phillip Forman, U. S. Atty., and Douglas M. Hicks, Asst. U. S. Atty., both of Trenton, N. J.

Before BUFFINGTON, WOOLLEY, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

The appellant, Julius Khin, individually and trading as Khin Furniture Company, was adjudicated a bankrupt on September 9, 1927. On January 23, 1929, an indictment was returned against him in the District Court for the District of New Jersey charging him with perjury. The indictment contained five counts. The jury returned a verdict of guilty upon counts II and V, and not guilty upon the other counts. In count II the charge is based upon testimony given before the referee in an examination pursuant to the provisions of section 21a (section 44(a), title 11, USCA), and in count V in an examination under section 7 (9) (section 25(9), title 11, USCA), of the Bankruptcy Act. Sentence of imprisonment was imposed and from that judgment this appeal was taken.

In determining whether there was error in the judgment upon the verdict, we do not deem it necessary to consider any of the assignments except the third, which is directed to the question whether the verdict of the jury is contrary to the law and the evidence.

In count II it is charged that the appellant deposed and swore as follows:

"In answer to the question, 'Didn't you (meaning the said Julius Khin) on September 7th (meaning September 7th, 1927) draw $3000.00?'

"Did answer and swear, 'Yes, sir.'

"And in answer to the question, 'What did you draw that for?' (meaning the said $3000.-00)

"Did answer and swear, 'There was a note (meaning a promissory note made by the said Julius Khin) due in the American National Bank and I (meaning the said Julius Khin) had to pay it' (meaning the said note)

"And in answer to the question, 'Whose note?'

"Did answer and swear, 'My own note, Khin Furniture Company.'

"And in answer to the question, 'And you paid it (meaning the said note) two days before the receiver (meaning the receiver in bankruptcy of the said Julius Khin individually and trading as Khin Furniture Company) was appointed?'

"Did answer and swear, 'It (meaning the said note) was due and I naturally did not want it (meaning the said note) to go to protest.'

"And in answer to the question, 'Was it (meaning the said note) a four months' note?'

"Did answer and swear, 'I don't know, but it (meaning the said note) was due that day' (meaning the seventh day of September, 1927)."

The falsity of that testimony is charged as follows:

"Whereas in truth and in fact as he, the said Julius Khin, then and there well knew, the said American National Bank held no note made by the said Julius Khin in his individual name or in the name of the Khin Furniture Company due on the said seventh day of September in the year 1927, and the said Julius Khin did not believe the same then and there to be due, but well knew that any note held by the said American National Bank and made by the said Julius Khin was not due and would not become due until on or about the seventh day of October in the year 1927."

In count V it is charged that the appellant deposed and swore as follows:

On being asked the question, 'Do you (meaning the said Julius Khin) own any real estate in Paterson?'

"Did answer and swear, 'West Paterson' (meaning that the said Julius Khin did own real estate in said West Paterson).

"And on being asked the question, 'What real estate do you own there?' (meaning at West Paterson aforesaid)

"Did answer and swear, 'Some lots' (meaning some lots of land).

"And on being asked the question, 'From whom did you (meaning the said Julius Khin) purchase the lots?' (meaning the said lots of land at West Paterson aforesaid)

"Did answer and swear, 'I (meaning the said Julius Khin) don't remember.'

"And on being asked the question, 'You (meaning the said Julius Khin) bought them (meaning the said lots of land at West Paterson aforesaid) from Max Khin?'

"Did answer and swear, 'No, sir.'

"And on being asked the question, 'From whom did you (meaning the said Julius Khin) buy the property?' (meaning the said lots of land at West Paterson aforesaid)

"Did answer and swear, 'I really don't remember the name (meaning the name of the grantor of the said lots of land). It (mean-

ing the conveyance of the said lots of land to the said Julius Khin) was about four years ago' (meaning about four years prior to November 15, 1927)."

The falsity of that testimony is charged as follows:

"Whereas in truth and in fact, as the said Julius Khin then and there well knew, he, the said Julius Khin did not own and possess in *his own name* any lands and real estate at West Paterson aforesaid prior to September 8, 1927, and well knew that his brother, the said Max Khin, conveyed to him, the said Julius Khin, a certain tract of land at West Paterson aforesaid by deed signed and acknowledged on September 8, 1927, and recorded in Passaic County, New Jersey, on September 14, 1927, and the said Julius Khin did not believe then and there that the same had been purchased by the said Julius Khin about four years prior to November 15, 1927, from some person whom he, the said Julius Khin, could not remember."

It is clear that the issue under count II was whether or not the note of $3,000 was due in the American National Bank on September 7, 1927.

At the trial the government, in support of that count, first proved the testimony of the appellant as set out in the indictment. An officer of the American National Bank was then called to prove the payment of the note. The witness testified, under examination by the district attorney, as follows:

"Q. Do you remember having a conversation with the defendant, Julius Khin, on or about September 7, 1927, in relation to a certain note that you had in your bank? A. No, except from our records.

"Q. You remember the bankruptcy of Khin? A. I do.

"Q. Do you remember shortly before that date having a conversation in connection with a certain note that you had with your bank? A. Yes.

"Q. Will you just tell the court and jury what that conversation was in relation to this note. A. In the regular course of our business we have customers come in and anticipate the payment of notes. Mr. Khin came in and told me he would like to pay the note, and I told him all right. He gave me a check in payment of that note, which I drew, and the transaction was closed and his account was credited with a rebate of the unearned interest.

"Q. You say he was given a rebate for unearned interest? A. He was.

"Q. Is this the check dated September 8, 1927, which you drew in payment of that note? (Handing paper to witness.) A. That is.

"Q. Was the note due at the time it was paid? A. I can only state that from our records.

"Q. Who has charge of those records? A. Our note teller."

Upon cross-examination he further testified:

"Q. Mr. Khin was a customer of your bank and had given a financial statement, hadn't he? A. He had.

"Q. I want you to look at this form not in respect to the figures but only with respect to the form and ask you whether or not that is the form executed by your customers and which was executed at that time, at the time they had business dealings with him. (Handing paper to witness.) A. That is correct.

"Q. I call your attention to the agreement which he signed at the bottom, 'In consideration of the granting of such credit the undersigned agrees that if the undersigned at any time fail or become insolvent or commit an act of bankruptcy, or a petition of bankruptcy being filed by or against the undersigned or a judgment or judgments be recovered against the undersigned in a court of record or a general assignment be made by the undersigned for the benefit of creditors, in such case all obligations of the undersigned held by you shall immediately *become due* and payable,' is that right? A. That is correct."

Although there was testimony for the prosecution that no demand was made by the bank for payment under the above clause of the agreement indorsed upon the financial statement, it is apparent from the testimony of the government's own witness that, at the time the appellant paid the note, an agreement had been made between him and the bank under which the note became due and payable upon his becoming insolvent or committing an act of bankruptcy. The indictment does not charge that the defendant falsely swore that the note was due according to the due date upon its face, but it is charged that he swore that "it (meaning the said note) was due and I naturally did not want it (meaning the said note) to go to protest." The gist of the charge is that the note was not due, but the proof by the government's witness was to the contrary, that the note was due under the agreement, for the appellant was then insolvent.

The testimony of the appellant, · upon which count V is based, was, as appears by the government's testimony, taken at an adjourned first meeting of creditors and the only testimony offered by the United States, after proving the alleged false testimony of the appellant, as set out in the indictment was the following offered by the district attorney:

"Mr. Hicks: * * * I offer at this time exemplified copies of two deeds, the first from John Casale to Max Khin, bearing date August 12, 1925, and recorded August 14, 1925, and the second deed from Max Khin to Julius Khin dated September 8, 1927, and recorded on September 14, 1927."

It will be observed that the traverse in count V of the indictment is broader than the alleged false testimony for in the traverse it is set out that "he, the said Julius Khin, did not own and possess *in his own name* any lands and real estate at West Paterson aforesaid prior to September 8, 1927, and well knew that his brother, the said Max Khin, conveyed to him, the said Julius Khin, a certain tract of land at West Paterson aforesaid by deed signed and acknowledged on September 8, 1927," etc. The appellant did not on oath testify that he did own and possess the real estate in his own name. The government's own evidence showed that the land was conveyed to him by his brother on September 8, 1927. Through that transaction the legal title to the real estate became vested in the appellant and it became a part of his assets in bankruptcy. The testimony in defense, which was uncontradicted, clearly showed that one John Casale, about two years prior to the appellant's bankruptcy, had conveyed the land to Max Khin, the brother of the bankrupt. Upon cross-examination by the district attorney, Max Khin, called as a witness for the defense, testified as follows:

"Q. You understand English, you didn't buy this property in your name for your brother Julius, did you? A. The property was his.

"Q. Oh, it was. Then you took it in your name for him, is that correct? A. That is right.

"Q. And it was his property all the time, wasn't it? A. That land, yes.

"Q. Then, what is this dispute you have been telling the court and jury about? A. There was a dispute as to whether it was his or not and I granted him that it was his."

It was urged by the district attorney that the purpose of the examination of the bankrupt was, under section 21a, concerning the acts, conduct, or property of the bankrupt, and, under section 7(9), 11 USCA § 25(9), he was required to "submit to an examination concerning * * * the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate." But considering that the real estate was part of the bankrupt's estate at the time of the adjudication, we do not deem it material whether the transaction with Casale was two years or four years prior to the examination.

While the attorney for the appellant withdrew his motion to quash the indictment and did not move for a directed verdict or except to the submission of the case to the jury, he did, after verdict, move in arrest of judgment. The motion was denied and exception allowed.

Acting under rule 11 of this court and being satisfied, as we are, that the charges of perjury in counts II and V of the indictment are not sustained by the evidence, we conclude that the conviction should be set aside.

The judgment is reversed.